## ARIPEKA SAW MILLS v. GEORGIA SUPPLY COMPANY.

BECK, J. It appearing from the record in this case that the defendant company, operating a sawmill, entered into a contract with the plaintiff for the furnishing of certain materials and labor and for the construction and installation of a certain mechanical appliance or appliances constituting a system for the transmission of power, known as the American rope-drive system, which was subsequently changed to a system known as the English rope-drive system by agreement of the parties to this case and a certain company engaged in the manufacture of the materials which went into the rope-drive system referred to, which latter company also furnished skilled labor for the installation of the system, the plaintiff in the case at bar being the sales agent of the manufacturing company referred to; *Held:*

1. It was error for the court to admit in evidence a letter from a salesman of the plaintiff, written to the manufacturing company, which would tend to prove that the defendant had decided to buy the rope-drive system which was actually installed upon the advice and representations of a person not connected with the manufacturing company or the plaintiff company, and that in making the purchase the defendant's agent relied upon the representations of this other person rather than upon a warranty of the vendor. This letter was open to the objection that it was hearsay, and the defendant could not have been bound by any representations made in it.

(a) This ruling is applicable to other written communications from the salesman of the plaintiff to the manufacturing company, which were duly objected to, and the contents of which do not appear to have been disclosed to the defendant or its agent before the execution of the contract of purchase.

2. It was error to admit a letter, apparently written after the execution of the contract for the purchase of the system of power transmission, from the manufacturing company to the salesman of the plaintiff, in which the manufacturing company called attention to certain defects in the system actually ordered and the advantages of another system, the purchase of which was strongly recommended. If this letter was actually

shown to the purchasing agent of the defendant before the execution of the contract of purchase, that can be made to appear upon the next trial; or if the evidence as to whether it was exhibited to the agent of the defendant is conflicting, that can be left to the jury with appropriate instructions.

3. Charges of the court which assumed that the contents of the letter last referred to were known to the defendant company or its agents before the execution of the contract of purchase should not have been given without also instructing the jury that the legal principles contained in the charges referred to were applicable only in case the contents of the letter were known to the defendant or its agents before entering into the contract of purchase.

4. A telegram from the manufacturing company to the defendant, stating that the sender of the telegram had cautioned .the defendant about certain defects in the system as installed, should have been excluded on the ground that it was a mere self-serving declaration.

5. The testimony of a witness for the plaintiff that he could have turned the grooves which he put in the wheels one half inch deeper if he had been requested to do so, and that he could have made them a "V" shape instead of a "U" shape, as appeared on the template which had been furnished him by the Dodge Mfg. Co., but no request was made of him to make any change in form or depth of the groove, should have been excluded; it not appearing that there was any duty upon the defendant or any of its agents to suggest the changes in the system as installed, or that it would have been proper for them to do so.

6. A certain blue-print issued by the manufacturing company, illustrating what were proper grooves in the rope-driving system which was ordered by the defendant, which print was offered in evidence by the defendant, should have been admitted, as it tended to illustrate the question whether or not the system actually installed was the system contemplated in the contract.

7. The court erred in charging the jury that if they should "find the goods involved in this case, sold to the defendant, were not of the kind or quality ordered, but that after knowledge of the fact that they were not of such quality or character, if you so find, defendant received same and retained the goods and dealt with them as its own, such conduct will amount to an acceptance and will be a waiver of the defects so discovered, and under such circumstances any defects so discovered could not be pleaded in abatement of the purchase-price." While such a charge might be applicable in a case involving the mere sale of goods and material, where the purchaser refused to pay for the same after accepting them, it was not applicable in the present case, which, while it does to a certain extent involve the sale of goods and materials, involves the more important element of proper combination, through skilled labor, of the goods and materials into a properly constructed system for the transmission of power.

8. Except as indicated in the foregoing headnotes, the assignments of error were without merit, and it is unnecessary to discuss them.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*

FEBRUARY 20, 1915.

Complaint. Before Judge Bell. Fulton superior court. September 15, 1913.

*Colquitt & Conyers,* for plaintiff in error.

*King & Spalding* and *E. M. Underwood,* contra.